## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DAVID POLLAN, as Emergency
Conservator for Christopher Edd,

        Plaintiff,

v.

SUMTER UTILITIES, INC., and
SAGE JONES,

        Defendants.

CASE NO.: 1:23-cv-02898-MHC

## DEFENDANTS'  REPLY IN SUPPORT OF
## MOTION TO STRIKE AND LIMIT THE TESTIMONY OF
## PLAINTIFF'S EXPERT DR. THOMAS BURNS

COME NOW Sumter Utilities, Inc. and Sage Jones (hereinafter "Defendants"), file this reply brief in support of their motion for an Order limiting the scope of opinions from Plaintiff's expert neuropsychologist, Dr. Thomas Burns ("Dr. Burns"), and striking his Addendum and limiting his testimony as follows:

## INTRODUCTION

Plaintiff's opposition confirms what Defendants' to Strike (Doc 69) demonstrated: Dr. Burns's "Addendum" is not rebuttal, not supplementation, not clarification, and not admissible under FRCP 26(e) or Rule 702 and should be excluded under Rule 403. The Addendum introduces Dr. Burns' new liability and fault opinion that Plaintiff was unable to appreciate risk and consequences in the

1

context of the accident at issue. ("Liability Opinion"). This opinion goes to whether and to what degree Plaintiff could be negligent.

**What makes this case unique is that Dr. Burns himself admitted under oath that he would not be offering this very opinion, or any liability opinions, opinions on fault, because they fall outside his expertise as a neuropsychologist.** Nonetheless, Plaintiff now deploys the new Liability Opinion both as a shield, to insulate Plaintiff from his negligence, and as a sword to attack Dr. Lawson's human factors methodology as "flawed" because she did not account for his testing results.

The Addendum violates disclosure rules, rests on unsworn narratives that contradict sworn testimony, and seeks to transform a damages expert into a liability expert. Defendants should not be punished by having to expend significant additional resources (easily in the five figures) to rebut the Liability Opinion. The Addendum should be stricken, and Dr. Burns should be limited to the opinions in his Original Report, which he confirmed remain unchanged. Doc 69 Ex. A.

## I.    PLAINTIFF'S SEMANTIC GYMNASTICS AND BROKEN SPELLS CANNOT RESCUE THE ADDENDUM

Rebuttal under Rule 26(a)(2)(D)(ii) must be "intended solely to contradict or rebut evidence on the same subject matter" identified by another party. Rule 26(e) permits supplementation only where an earlier disclosure was "incomplete or incorrect" when made. Plaintiff's Response confirms the Addendum is neither. Instead, Plaintiff cycles through inconsistent labels for Dr. Burns's new opinions:

"subsequent," "expanded," "corrective," "clarifying," and "supplemental,"
depending on the page. Doc 71 pp. 2, 13–14. No amount of semantic gymnastics can
disguise the truth: the Addendum is an unapologetic violation of the Federal Rules,
NDGA 26.2, and Scheduling Order to assert a new liability and fault opinion that
belonged in the initial disclosure and Burns' Original Report.

Timing underscores the point. Plaintiff served the Addendum on the very day
dispositive motions were due, hastily labeled "rebuttal" to Dr. Lawson to shoehorn
it into the Scheduling Order. Only after Defendants moved to strike did Plaintiff
begin recasting it as "supplementation" and "expansion" and "clarification" and
"correction" under Rule 26(e). However, Rule 26 is not a device to allow an expert
to add new opinions for a party's case-in-chief to perfect a litigating strategy.
Coward v. Forestar Realty, Inc., 282 F. Supp. 3d 1317, 1331 (N.D. Ga. 2017)
(rebuttal testimony is "not an opportunity to advance new opinions or new
evidence"). Allowing such tactics would eviscerate disclosure deadlines.

Dr. Burns' justification for "need" of the new Liability Opinion is that Dr.
Lawson "broke the spell" and "knocked [him] out of his defense crouch." Doc 71
pp. 2 and 14. This excuse is more suited to a fantasy novel than a federal court filing.
There is no rule, precedent, or principle in the Federal Rules that permits late expert
disclosures based on metaphorical awakenings. Plaintiff's attempt to recast

3

procedural noncompliance as an epiphany is not only unsupported by any authority, but it trivializes the seriousness of the disclosure obligations he failed to meet.

## II.    DR. BURNS' LIABILITY OPINION IS NEITHER JUSTIFIABLY DELAYED NOR HARMLESS UNDER RULE 37(c).

### A.    Dr. Burns's Testimony Forecloses the Liability Opinion

Dr. Burns's disclosure stated he would address Plaintiff's "emotional status growing up at the time of the incident and to the present." Doc 69 Ex. B, 116:16–22). His July 2024 report contained opinions consistent with that disclosure.

Dr. Burns testified that days before his first deposition (February 2, 2025), Plaintiff's counsel contacted him and asked whether he could offer opinions on Plaintiff's awareness of his actions at the time of the accident and the risks and consequences associated with them. See Doc 69 Ex. B, 31:6–11. He answered: "**That is something I have never really given a whole lot of thought to**" and "that it was not something that came up for me in any point in this." Id., Ex. B, 105:2-8. 120:23–25. He further testified such analysis fell outside his expertise and were **not part of his evaluation**. Id., 102:24–103:10. Dr. Burns explicitly **confirmed he would not be offering that opinion**. Id., 17 and fn 4.  He also confirmed that he would **not be offering an opinion on fault or liability**. Doc 69 Ex. B 61:17-23. **This alone justifies exclusion**. AZZ, Inc. v. S. Nuclear Operating Co., CV 119-052, 2023 WL 2746033, at *15 (S.D. Ga. Mar. 31, 2023).

**B**.     **Plaintiff's Counsel's Contradictory Narrative Lacks Evidentiary Support**

Plaintiff's counsel now offers unsworn assertions about supposed pre-deposition conversations with Dr. Burns, suggesting their early requests for a liability opinion somehow transform his Addendum into a Rule 26(e) supplementation. But asking an expert for an opinion is not the same as the expert disclosing one. Moreover, Dr. Burns' sworn testimony and Plaintiff's counsel's assertions cannot both be true. Either Dr. Burns truthfully testified at his deposition, or Plaintiff's counsel's account, which they conceded at times to be "[c]ontrary to Dr. Burns' recollections at the first deposition" is the truth, in which case they are impeaching their own expert witness. Doc 71 p. 3.

Plaintiff's counsel now claims, without evidentiary support, that long before Dr. Burns tested Plaintiff, drafted his report, and sat for deposition, they repeatedly instructed him to offer the Liability Opinion. Counsel claims, without evidentiary support, that as early as January 2024 "Dr. Burns was told" they "were trying to address **Defense contentions** that during the events leading up to and including the scooter crash Mr. Edd was a capable competent adult." Doc 71 p. 3 (emphasis added). No evidence was submitted and Dr. Burns' Invoice does not reflect any communications on that date. Ex. A, Dr. Burns' Invoice.

Here, Defendants asserted comparative fault and assumption of risk in their Answer (Doc. 12), but Defendants never made such "contentions." Indeed,

5

Defendants had no reason to do so. There is no presumption under Georgia law that a party has a mental disability. So, unless Plaintiff affirmatively raises cognitive deficiencies in his case-in-chief, Defendants had no burden to disprove it. <u>See</u> O.C.G.A. § 24-14-1 ("The burden of proof generally lies upon the party who is asserting or affirming a fact…").

Counsel further insists they "**again consulted and told**" Dr. Burns before his report to assess Plaintiff's "ability to comprehend and appreciate risk" on the day of the accident. Doc 71 p. 4. There is no evidence of this conversation. <u>Id</u>. Then, on June 21, 2014, they "**again reiterated**" the issue, claiming he should tie Plaintiff's incapacity to being "excited," "trying to make a friend," and 'under peer pressure." <u>Id</u>. at pp. 4-5. There is no evidence of this conversation, (<u>id</u>.) and none of these embellishments appear in the record. Plaintiff never testified that he was "excited" or experiencing "peer pressure" while "trying to make a friend." He was hanging out with his nephew, something he did routinely.

Counsel also represents that before Dr. Burns' deposition, "the issues were **again raised**," though Dr. Burns "got sidetracked on standards **for criminal culpability**,[1] before being guided back" after which he "fluidly relate[d] [to] Chirs

---

[1] Plaintiff misleadingly cites Dr. Burns' speculative pre-testing remark that schizophrenia and bipolar disorder would undermine claims of competence at the time of the crash. Doc 71 p. 4. This perhaps suggesting that Dr. Burns had already formed an opinion about Plaintiff's capacity before any evaluation took place. Given

[sic] ability to act at the time of the crash…." Id. at p. 5. It is remarkable that, despite Dr. Burns' having "fluidly relate[d]" his testing results to an opinion regarding Plaintiff's capacity to appreciate risk and consequences, he repeatedly disavowed having any such opinion at his deposition. See Doc 69 p. 17 and fn 4. Indeed, he questioned whether *anyone* could even assert that opinion to a degree of medical certainty. See Id. Ex. B 102:24-103:10.

## C.    Plaintiff's Counsel's Representations Confirm the Addendum is a Late Case-in-Chief Liability Opinion

Whether one credits counsel's narrative or Dr. Burns's sworn testimony, the conclusion is the same: Plaintiff's counsel knew a liability opinion belonged in their case-in-chief. They also knew Dr. Burns would not provide it because he said so under oath. Even if Plaintiff could repackage Dr. Burns's Addendum as "supplementation" under Rule 26(e), exclusion is still required under Rule 37(c)(1) because Plaintiff has not shown the late disclosure was justified or harmless. The burden is squarely on the party offering the late disclosure. Durkin v. Platz, 920 F. Supp. 2d 1316, 1328 (N.D. Ga. 2013). Plaintiff has not even tried to meet it.

There is no justification. By Plaintiff's own account, counsel asked Dr. Burns about Plaintiff's capacity to appreciate risk before he tested Plaintiff, before he wrote his report, and before he sat for deposition. Doc 71 pp. 3-5. If true, that opinion

---

the context, he may have been referring to a criminal matter. Regardless, there is no record testimony supporting this statement, nor is it included in the Addendum.

should have been disclosed from the outset. Instead, after discovery closed, expert deadlines passed, and Dr. Burns testified under oath that he could not give the opinion, Plaintiff strategically produced the Addendum on the day dispositive motions were due.

Nor is the failure harmless. Plaintiff's argument that "the only prejudice" is to the jury if Dr. Burns's Addendum is excluded turns Rule 702 and Daubert on their heads. It is not "unfair" to keep inadmissible expert testimony from a jury. It is the Court's gatekeeping duty. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993). The rules are designed to prevent a jury from hearing testimony that is untimely, unreliable, or outside the expert's qualifications. Calling exclusion "prejudice to the jury" is nonsensical.

There is no authority supporting the application of the criminal competency standard in a civil case, and the criminal competency decisions cited by Plaintiff are inapposite. Competency to stand trial as a criminal defendant is a fundamentally different inquiry than whether a plaintiff appreciated a real-world risk and civil liability for negligence. Likewise, Plaintiff's suggestion the Court decide Plaintiff's cognitive capacity applying a workers' compensation definition, arguing that "[t]his definition should influence how courts assess their ability to comprehend risks or act negligently," is without authority. Doc 71 pp. 7-8. Plaintiff also cites Childs v. U.S.,

8

923 F. Supp. 1570 (1996), but that case dealt with competing opinions of two expert economists regarding the calculation of wrongful death damages for a six-year old.

Plaintiff also failed to establish harmlessness, because it is not. Defendants "will suffer harm...as [they] must expend resources responding to the new opinions in the report even if the Court waives the expert disclosure deadline and allows [them] to present a report from [their] expert in response to it." See Coward, 282 F. Supp. 3d 1317, 1330 (N.D. Ga. 2017); see also Fox v. Gen. Motors LLC, 1:17-CV-209-MHC, 2019 WL 3483171, at \*14 (N.D. Ga. Feb. 4, 2019). Expending the resources that would be required to pay another expert to review the records in this case, write a report, and prepare for a deposition, along with Defendants likely having to draft and file *another round of dispositive motions* would impose tens of thousands of dollars in costs and delay the trial.

Finally, Defendants' deposition request that Dr. Burns notify counsel if he developed new opinions cannot be twisted into consent to break disclosure rules. It was a safeguard, not a waiver. Plaintiff cannot use it to excuse a violation of Rule 26 and the Scheduling Order.

## III.   DR. BURNS' NEW OPINION SHOULD BE EXCLUDED AS IT FAILS *DAUBERT*, RULE 702, AND RULE 403 STANDARDS

### A.   Dr. Burns' Neuropsychology Credentials Do Not Qualify Him to Dictate Standards in the Field of Human Factors

Plaintiff contends that Dr. Burns' expertise is "directly relevant to 'human

9

factors.'" Doc 71 p. 7. (emphasis in original). The use of quotation marks around "human factors" is not incidental. It subtly undermines the legitimacy of a well-established scientific discipline. Dr. Lawson's analysis focused exclusively on the objective features of the incident environment, specifically, the visual cues available to any operator approaching the intersection, whether a truck driver or an e-scooter rider. See Doc 69 Ex. D, 62:20–63:8. Her conclusions were based on observable, physical conditions and did not rely on any individualized cognitive or intellectual testing of Plaintiff *or* Mr. Sage Jones, who was operating the truck. **Dr. Lawson did not opine or assume Plaintiff was "neurotypical" in forming her expert opinions** and Plaintiff does not cite to record establishing otherwise.

Without knowledge, expertise, or training in the study of human factors, much less reference to any accepted standards in the human factors field, Dr. Burns wants to tell the jury that in all cases and under all circumstances, "a human factors expert *should* tailor their analysis to the specific characteristics of the person rather than defaulting to a neurotypical adult standard." Doc 71 p. 8 (emphasis added). Dr. Burns is simply not qualified to testify about what methodologies are commonly accepted in the human factors field of expertise or, by extension, what factors must be considered in rendering a human factors opinion. Id. at p. 9.

Dr. Burns misunderstands the science of human factors and he offers no peer-reviewed literature, no empirical studies, and no professional guidelines to

substantiate criticisms of Dr. Lawson's opinions. Instead, he attempts to impose his own expectations onto a discipline in which he has no training, experience, or expertise. That both human factors and neuropsychology fields study humans does not make them interchangeable. Expertise in one does not confer authority in the other, any more than a chemical engineer is qualified to testify about biomedical engineering simply because both involve molecules and an engineering degree. Dr. Burns is not a human factors expert, and his attempt to redefine its methodological boundaries is inappropriate and fails to meet <u>Daubert</u> standards and Rule 702.

## B. Dr. Burns' Employs an Unreliable "Methodology" in Rendering the Liability Opinion

Qualification and methodology are essential under Rule 702. <u>Doe v. Rollins Coll.</u>, 77 F.4th 1340, 1347 (11th Cir. 2023). "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." <u>Daubert</u>, 509 U.S. at 595. Dr. Burns now offers an event-specific conclusion about perception, reaction, traffic-control comprehension (without having tested Plaintiff on it), and credibility, relying on his test results. He relies on and extrapolates from his clinical testing results, claiming they "fluidly relate" to his Liability Opinion. Doc 71 p. 5.

He testified, however, that he "didn't look into" whether Plaintiff had the mental capacity to perceive an intersection, it "is a tough question," he "didn't have a test" that would offer insight, and that he could not say. Doc 69 Ex. B 74:4-13. He further testified that he did not test on it and that "I'm trying very hard not to over

11

interpret my data." Doc 69, Ex. B 93:13-94:3. He also testified while there are tests to determine whether a person understands the meaning of a stop sign, "I don't do them" and he did not test Plaintiff on it. Doc 69 Ex. B 75:11-14; 130:8-130. Dr. Burns testified that the purpose of his testing was *not* to "figure out if he hit the brake or not." Id. 81:7-12. He never analyzed the accident scene and he considered the facts of what happened that day irrelevant.  Id. 61:10-16.

Yet, he cites no peer-reviewed literature, empirical studies, or generally accepted scientific principles supporting the proposition that clinical testing results can predict that it would have been **impossible** for Plaintiff to want to slow down, stop the Scooter, or steer to avoid hitting the truck. Without ever witnessing Plaintiff operate a scooter or bicycle, and without posing a single question to assess his competence, he should not be permitted to testify to what is his pure speculation that Plaintiff was "incapable of learning through experience that he needed to stop at 'that red octagon' or he could get hit." Doc 69 Ex. B 78:16-79:6. That is a bold statement in light of the absence of evidence Plaintiff was involved in an accident over the past 18 years.

These self-serving conclusions are unreliable and amount to nothing more than *ipse dixit*. See Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008); Butler v. Adorno, 2024 WL 1314810, at *5 (M.D. Ga. Mar. 27, 2024); see also D. H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC, 526

F. Supp. 3d 1360, 1371 (N.D. Ga. 2021) ("neither <u>Daubert</u> nor Federal Rule of Evidence 702 requires a trial judge "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Simply put, Dr. Burns offers no cognizable methodology to support his Liability Opinion and it must be excluded on this basis.

### C.   <u>Rule 403 Compels Exclusion of Dr. Burns' Liability Opinion</u>

Even if otherwise admissible, Rule 403 warrants exclusion because the probative value Dr. Burns' testimony would be substantially outweighed by the risk of confusing the jury. <u>United States v. Frazier</u>, 387 F.3d 1244, 1263 (11th Cir. 2004). Dr. Burns' Liability Opinion conflates intellectual limitations with real-world physical and perceptual ability, and he does so without looking at the environment or considering the factual evidence of what occurred that day.

Dr. Burns should be precluded from instructing the jury to conclude Plaintiff was categorically incapable of negligence because he could not appreciate risk or a 4-way stop intersection, recognize traffic signs, or learn to avoid harm by not flying into the street. It is inherently misleading and will result in substantial prejudice to Defendants. The jury's role will be to hear Dr. Burns testify about Plaintiff's disabilities, observe Plaintiff, and listen to the Court's instructions on the parties relative burdens of proof.  It is not for Dr. Burns to usurp that role.

## IV.   DR. BURNS'S LIABILITY OPINION DOES NOT REBUT DR. LAWSON'S HUMAN FACTORS OPINIONS 4 AND 5

### A.   Opinion 4: Seat/Position and potential for physical impediment

Dr. Lawson's Opinion 4 addressed a physical fact: a rear passenger may have limited access to controls. Dr. Burns does not contradict that opinion. He instead used it as a springboard for offering his Liability Opinion, arguing that Plaintiff's global cognitive deficits rendered his seat position "irrelevant" because it would never occur to him to apply the brakes or try to steer the Scooter. Doc 71 pp. 9–10. In addition to not being a rebuttal opinion, Dr. Burns' assertion that Plaintiff was cognitively incapable of such actions is speculative, contradicted by the record,[2] and irrelevant to the concept of physical impediment.

### B.   Opinion 5: Factors Relevant to Perception and Response

Dr. Lawson's Opinion 5 applied a foundational human factors principle that more time to perceive a hazard gives more time to react. The concept of Perception-Response Time (PRT) is universally accepted in the field of human factors and standard values for PRT are well-documented in the literature.

Plaintiff claims Dr. Burns rebuts this opinion by recycling his Liability Opinion and asserting that "more time is useless to a person with documented deficits." Doc 71 pp. 10–11. This claim does not refute the well-established principle

---

[2] Plaintiff testified in two separate depositions that he attempted to brake and did steer the scooter to avoid the Sumter truck.

14

of Perception-Reaction Time (PRT); it sidesteps it entirely. His opinion, which extends beyond the Plaintiff, is not grounded in any peer-reviewed methodology and fails to account for the mere possibility that even individuals with cognitive impairments benefit from increased time to perceive and respond to hazards.

Had the Plaintiff been walking instead of riding a scooter, his reduced speed approaching the intersection would have naturally allowed more time to react, an outcome Dr. Burns dismisses outright without any scientific justification. Rather than engaging with the core human factors principle, he substitutes vague speculation about what the Plaintiff's PRT might or might not have been under the specific circumstances of the accident. This is not rebuttal. It is a rejection of decades of empirical research, replaced with conjecture masquerading as expert analysis.

## CONCLUSION

Dr. Burns's Addendum is an impermissible attempt to inject new liability and fault opinions under the guise of some inaccurate label. Dr. Burns is not qualified to render human-factors or event-specific opinions; his methodology is untethered to the accident; and admitting his Addendum would confuse and usurp the role of the jury. The Court should grant the Motion, strike the Addendum in its entirety, and limit Dr. Burns' testimony to the opinions expressed in his Original Report.

Respectfully submitted this 2nd day of September, 2025.

**LEWIS BRISBOIS BISGAARD**
**& SMITH LLP**
600 Peachtree Street, Suite 4700
Atlanta, Georgia 30308
(404) 348-8585
(404) 467-8845 Facsimile
Audrey.Berland@lewisbrisbois.com
Cameron.Mobley@lewisbrisbois.com

*Counsel for Defendants*
*Sage Jones and Sumter Utilities, Inc.*

*/s/ Audrey K. Berland*
AUDREY K. BERLAND
Georgia Bar No. 598415
CAMERON A. MOBLEY
Georgia Bar No. 613048

## **RULE 7.1D CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14-point size.

This 2nd day of September, 2025.

/s/ Audrey K. Berland_____
Audrey K. Berland
Georgia Bar No. 598415

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of September, 2025 a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE AND LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT DR. THOMAS BURNS** was electronically filed with the Court via CM/ECF, providing automatic electronic service to the following counsel of record:

Kendrick K. McWilliams, Sr.
Bruce Hagen
Hagen Rosskopf, LLC
119 North McDonough St.
Decatur, GA 30030
kendrick@hagen-law.com
bruce@hagen-law.com

*Attorneys for Plaintiff*

This 2nd day of September, 2025.

**LEWIS BRISBOIS BISGAARD**
    **& SMITH LLP**
600 Peachtree Street, Suite 4700
Atlanta, Georgia 30308
(404) 348-8585
(404) 467-8845 Facsimile
Audrey.Berland@lewisbrisbois.com
Cameron.Mobley@lewisbrisbois.com

/s/  Audrey K. Berland
AUDREY K. BERLAND
Georgia Bar No. 598415
CAMERON A. MOBLEY
Georgia Bar No. 613048

*Counsel for Defendants*
*Sage Jones and Sumter Utilities, Inc.*

# EXHIBIT A

# Statement

Peachtree Neuropsychological Associates, PC

990 Hammond Drive
Suite 575
Atlanta, GA 30328

| Date |
|---|
| 2/20/2025 |

| To: |
|---|
| Dan Pruitt<br>Hagen, Rosskopf & Earle, LLC<br>119 North McDonough Street Georgia<br>Decatur, GA 30030 |

| Amount Due | Amount Enc. |
|---|---|
| $1,675.00 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 01/31/2024 | Balance forward | | 0.00 |
| 02/28/2024 | Christopher Edd-<br>INV #2754. Due 02/28/2024.<br>--- Consultation, 0.5 @ $500.00 = 250.00<br>--- Review of Records, 2.5 @ $500.00 = 1,250.00<br>--- Consultation, 0.5 @ $500.00 = 250.00 | 1,750.00 | 1,750.00 |
| 06/25/2024 | PMT #6315. | -10,000.00 | -8,250.00 |
| 10/20/2024 | INV #2895. Due 10/20/2024.<br>--- Neuropsychological Evaluation, 16 @ $500.00 = 8,000.00<br>--- Consultation, 1 @ $50.00 = 50.00<br>--- Review of Records, 0.25 @ $500.00 = 125.00<br>--- Consultation, 0.5 @ $500.00 = 250.00 | 8,425.00 | 175.00 |
| 02/06/2025 | INV #2997. Due 02/20/2025.<br>--- Deposition, 3 @ $500.00 = 1,500.00 | 1,500.00 | 1,675.00 |

EXHIBIT
D-15
JW 2/28/25

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 1,500.00 | 0.00 | 0.00 | 0.00 | 175.00 | $1,675.00 |